IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GERALD BUSHMAKER,

                Plaintiffs,

v.

RAPID AMERICAN CORPORATION,

                Defendant.

ORDER

09-cv-726-slc

---

This order relates to the parties' ongoing dispute whether Bushmaker may present evidence at trial in support of a theory that Philip Carey had a duty to provide a post-sale warning to end users of its asbestos-containing products. Due to the timing of this dispute and the parties' submissions, the court has had addressed this issue on the fly: after receiving supplemental briefing from the parties on this issue, on March 1, 2013, this court issued an order directing plaintiff to make a written proffer identifying the evidence he intended to present at trial showing that it would have been technically and economically feasible for defendant to have identified and contacted product users after the products were sold or issued a recall of the products and that any warning that defendant could have provided would have been effective in reaching those users. On Sunday, March 3, 2013, plaintiff submitted his proffer, which is set forth at dkt. 148.

Then, just before jury selection on Monday, March 4, 2013, the court briefly entertained oral argument from defendant as to why plaintiff's proffer was inadequate. The court concluded to the contrary, but allowed defendant an opportunity to submit a more detailed written response. Defendant has now submitted that response, in which it makes the following arguments: 1) plaintiff has failed to offer an expert on the feasibility or means by which Philip

Carey could have issued post-sale warnings; 2) Mancuso's report is inadequate for this purpose because his recommendations were only prospective, not retrospective; 3) plaintiff has no evidence that adopting the recommendations made by Mancuso, post-sale, would have been economically feasible; and 4) plaintiff has no evidence to show that the various channels identified by plaintiff as a means by which Philip Carey could have provided post-sale warnings to end users of its products would have been effective in reaching the end users. Dkt. 150.

Having considered defendant's written response without the rush of trial (we gave the jury a snow day due to today's predicted blizzard), I am reversing my position on the adequacy of plaintiff's proffer: it's not enough. Therefore, plaintiff's proffered evidence regarding post-sale warnings shall not be admitted at trial.

As an initial matter, I am not persuaded by defendant's contention that Dr. Mancuso's testimony–upon which plaintiff relies to establish that it was both economically and practically feasible for Philip Carey to have issued a warning–is not relevant because Mancuso did not indicate that his recommendations applied to past end-users of Philip Carey products or suggest a means by which Philip Carey could identify past users. This is because I do not understand plaintiff to be offering Mancuso's testimony to establish these facts. Rather, plaintiff's point is that given the nature of Philip Carey's products, it was foreseeable that these products would be removed or replaced at some point after they were sold, and therefore individuals performing that removal or replacement could have benefitted from Mancuso's recommendations, if Philip Carey had implemented them. In other words, plaintiff's theory is that although Philip Carey might have already sold the products, it had a continuing duty to warn of newly-discovered

hazards associated with their use because it was foreseeable that these products still were in existence and were likely to be used in ways that would subject users to a risk of injury.

More persuasive is defendant's argument that plaintiff has failed to offer sufficient proof that implementing Mancuso's recommendations would have been a) economically feasible and b) effective in reaching end users of Philip Carey's products. As defendant points out, all plaintiff offers on economic feasibility is the following statement: "The costs to educate consumers and users by printing and distributing the proposal already developed by Dr. Mancuso would be affordable for a company of Philip Carey's size." All that plaintiff says about Philip Carey's size is that it had more than 1,000 employees and "high volume of sales," which is hardly compelling evidence of the economic feasibility of providing warnings.

More critically, however, is that plaintiff's evidence does not support plaintiff's suggestion that Mancuso's "recommendation" was an "already developed" set of warnings or recommendations ready to simply be "printed" at low cost and delivered to the end users. Mancuso did not actually propose any actual warnings or safety recommendations; indeed, he does not even identify the particular danger(s) to be warned against. Rather, Mancuso suggested to Philip Carey that such recommendations be made *after* the company hired engineers, conducted research and analysis, and talked to others in the industry. Plaintiff has not proffered or even suggested that he has any evidence that shows what it would have cost Philip Carey to implement these recommendations, how long it would have taken the company to do so, or what actual warnings would have resulted. This is critical evidence without which a jury would have no basis to determine the feasability or efficacy of any possible warnings that Philip Carey might have created had it followed the multi-step process recommended by Mancuso.

3

To the same effect and equally persuasive upon more measured consideration by the court is defendant's contention that plaintiff lacks adequate evidence to show that the various channels he has identified as avenues through which Philip Carey could have provided post-sale warnings to end users would have been likely to reach those end users. For example, plaintiff does not indicate that he has any evidence to show: 1) that the Consolidated Papers company or pipefitters like Bushmaker were subscribers to either "Asbestos" or "Heating and Ventilation"; 2) that it would have been economically or technically feasible for Philip Carey to send technical personnel or communicate in writing with all of the various trade unions that might have had workers who used Philip Carey products, or that, even if feasible, these communications to the unions would been passed along to significant numbers of its members; or 3) that, in the absence of evidence that Consolidated Papers was continuing to purchase Philip Carey products after 1960, any post-sale information provided by Philip Carey to its distributors would have reached Consolidated Papers, much less Bushmaker,. *Cf. Sharp ex rel. Gordon v. Case Corp.*, 227 Wis. 2d 1, 23 (Wis. 1999) (noting that the evidence showed that Case had issued post-sale warnings about other problems, that it was feasible and inexpensive to distribute warnings or decals to dealers, that dealers were able to reach about 50 percent of tractor owners and that advertisements in national magazines could reach additional owners).

Although the court's initial review of plaintiff's proffer on Sunday afternoon seemed sufficient to allow him to proceed on this theory, upon more careful consideration, I am now–and dispositively–persuaded that plaintiff does not have sufficient evidence from which a jury reasonably could conclude that it would have been technically and economically feasible for Philip Carey to have issued post-sale warnings that could have been effectively communicated

to and acted upon by the end users of its products. Although plaintiff posits a number of hypotheses as to how this might have been done, he lacks sufficient evidence to support his theories and to support a reasonable jury verdict on this question. The jury is allowed to draw appropriate inferences from the evidence, including circumstantial evidence, but the jury may not speculate or engage in guesswork. Accordingly, I am GRANTING defendant's motion in limine No. 15.

Entered this 5th day of March, 2013.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge